MICHAEL J. BIDART #60582
RICARDO ECHEVERRIA #166049
STEVEN MESSNER #259606
**SHERNOFF BIDART ECHEVERRIA BENTLEY LLP**
600 South Indian Hill Boulevard
Claremont, CA 91710
Phone: (909) 621-4935
Fax: (909) 625-6915
MBidart@shernoff.com
SMessner@shernoff.com
REcheverria@shernoff.com

ROBERT TIEDEKEN #5-1948
**WOLF TIEDEKEN & WOODARD P.C.**
401 West 19th Street, Suite 300
P.O. Box 491
Cheyenne, WY 82003-0491
Phone: (307) 635-2876
Fax: (307) 632-4902
robert@wolftiedeken.com

Attorneys for Defendants Apartment Management
Consultants, LLC, and Sunridge Partners, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

| | |
|---|---|
| INTERSTATE FIRE & CASUALTY COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>APARTMENT MANAGEMENT CONSULTANTS, LLC, SUNRIDGE PARTNERS, LLC, and AMBER NICOLE LOMPE,<br><br>Defendants. | Case No. 2:13-CV-00278-ABJ<br><br>**APARTMENT MANAGEMENT CONSULTANTS, LLC'S, AND SUNRIDGE PARTNERS, LLC'S OPPOSITION TO INTERSTATE FIRE & CASUALTY COMPANY'S AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Declaration of Ricardo Echeverria, Declaration of Brenda Barrett Wright, and [Proposed] Findings of Fact, Conclusions of Law, and Order] |

**TABLE OF CONTENTS**

I.   MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

II.  STANDARD OF REVIEW .......................................................................................... 2

III. STATEMENT OF UNDISPUTED FACTS .................................................................. 2

IV.  STATEMENT OF DISPUTED FACTS ........................................................................ 3

V.   ARGUMENT ................................................................................................................. 5

   A. An insurer's breach of the implied covenant of good faith and fair dealing will subject it to *all harm* caused by that conduct—including harm to the pecuniary interests of the insured ......................................................................... 5

   B. Proximate cause—normally a question of *fact* for the jury—only requires conduct to be a substantial factor in bringing about the injuries ............................ 6

   C. AMC's lost profits are recoverable for the insurers' failure to settle as they were proximately caused by the *Lompe* judgment and are capable of being calculated with a reasonable degree of probability ................................................. 7

   D. Reliance on *contract* cases to relieve Interstate/FFIC for their tortious failure to settle the *Lompe* Action is mistaken ................................................................... 9

   E. Dr. Peter Formuzis's opinion on lost profits is admissible .................................... 10

VI.  CONCLUSION ............................................................................................................ 11

- i -

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Under Wyoming law, proximate cause is generally a *question of fact* for the jury. *Buckley v. Bell*, 703 P.2d 1089, 1092 (Wyo. 1985). And to be a proximate cause of an injury, the act need only constitute a substantial factor in bringing about that injury. *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo. 1983).

Ignoring this framework, Interstate/FFIC have moved for summary judgment on the grounds that the judgment in the underlying *Lompe* Action was not the *primary* factor in causing AMC to not be awarded three property management contracts. But that is not the standard for proximate cause under Wyoming law. Indeed, "[a] cause does not have to be the only cause or the last or nearest cause. It is sufficient if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury." Wyoming Civil Pattern Jury Instructions, § 3.05 (2013).

Here, Interstate/FFIC have submitted declarations from property owners only stating that they believed the *Lompe* judgment was not the *primary* factor for why AMC was not awarded the contracts. In addition to ignoring the actual proximate cause standard, these declarations are contradicted by the long history of AMC with similar properties before the judgment, the due diligence and work AMC had already dedicated to these properties before rejection, the admissions of those same owners that the judgment was a factor in their decision, and even the statement of one that: "with [AMC]'s unsettled lawsuit for gross negligence, we are not able to get management approval for you."

Whether the *Lompe* Action, and the judgment entered after Interstate's/FFIC's failure to settle the matter when presented with a reasonable opportunity, was a *substantial factor* in causing the lost profits remains a triable issue of fact. In this specific case, as with proximate cause generally, it cannot be resolved on summary judgment.

Interstate's/FFIC's motion for partial summary judgment should be denied in its entirety.

## II.
## STANDARD OF REVIEW

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court must "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Green v. Donahoe*, 760 F.3d 1135, 1146 (10th Cir. 2014). The moving party bears the "initial responsibility" to identify the basis for its motion, and demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.
## STATEMENT OF UNDISPUTED FACTS

As part of its claim for damages in this matter, AMC contends that, due to Interstate's/FFIC's breach of the implied covenant of good faith and fair dealing for its failure to settle the *Lompe* Action and the resulting judgment, AMC is entitled to a projected loss of management fee income over the next five years. (Undisputed Fact ("UF") No. 1.) That projected loss relates to three properties:

(1) the Lex at Lowry ("Lowry"), owned by TruAmerica and located in Denver, Colorado (UF 5);

(2) Ponderosa Villas ("Ponderosa"), also owned by TruAmerica and located in Denver, Colorado (UF 5); and

(3) Element31, owned by The Ritchie Group, LLC, and located in Salt Lake City, Utah (UF 11).

TruAmerica and The Ritchie Group hire property management companies—like AMC—to manage and maintain various apartment complexes that they own, with the management companies conducting the regular, day-to-day maintenance of the property, collecting rents, and administering staff. (UF 4, 11.)

AMC, as part of its claims in this lawsuit, seeks damages for not being awarded the management contracts for the Lowry, Ponderosa, and Element31 properties due to Interstate's/FFIC's failure to settle the *Lompe* Action and breach of the implied covenant of good faith and fair dealing. (UF 3, 4.) AMC's expert, Dr. Peter Formuzis, Ph.D., has calculated the total present value of AMC's projected loss at $1,575,332, which is the combined figure for the three properties over a five year period. (UF 2.)

## IV.
## STATEMENT OF DISPUTED FACTS

**Fact Nos. 6, 7, 8, 9, and 10** – These facts are incomplete, misleading, and fact number 10 is speculation.

AMC was heavily involved in consulting and due diligence work on the Ponderosa and the Lowry properties in Colorado for TruAmerica, starting in early 2014. (Declaration of Brenda Barrett Wright, ¶ 2.) For these projects, AMC performed all of the due diligence for TruAmerica, including file audits, unit inspections, market surveys, review of all contracts, and informing the client of those contracts to renew/assume and those to not. AMC, at TruAmerica's direction, had interviewed staff members and made offers to work for AMC in anticipation of managing the TruAmerica properties. (*Id.*) All signs pointed to AMC receiving the management agreement for the Ponderosa and the Lowry properties. (*Id.*) At no point was there any discussion about AMC's compensation for due diligence, as AMC normally performs these duties free of cost to their clients, assuming AMC retains management should the client purchase the asset. (*Id.*)

Before TruAmerica engaged in the bid process, the owner of TruAmerica traveled to New York to meet with TruAmerica's principal/equity partner, Guardian Life. At that meeting, Guardian Life had expressed serious reservations about the *Lompe* Action. (Wright Decl., ¶ 3.) Due to those reservations, TruAmerica engaged in the bid process for management of the Lowry and the Ponderosa properties. (*Id.*, ¶ 4.)

A meeting was then held between representatives of AMC and TruAmerica on May 22, 2014 in Denver, Colorado for AMC to present its bid to TruAmerica. (*Id.*, ¶ 4.) Following that

meeting, Lynn Owen of TruAmerica and Brenda Barrett Wright of AMC had a personal discussion in Owen's office. There, Owen related that TruAmerica was extremely uncomfortable with the *Lompe* Action and did not know if it was something that TruAmerica could get past. (*Id.*)

On May 29, 2014, Lynn Owen, on behalf of TruAmerica, sent an email to Brenda Wright regarding the Lowry and Ponderosa properties. (Wright Decl., ¶ 5, Ex. A; Ginty Decl., Ex. C.) TruAmerica stated that "with your unsettled lawsuit for gross negligence, we are not able to get management approval for you on the 2 larger assets, Lowry and Ponderosa, for our equity partners, Guardian Life and Allstate. As difficult as this is, we hope you understand the situation." (*Id.*) No other reasons for choosing a different management company were provided. (*Id.*) It was only after TruAmerica chose another property management company for the two properties that it finally paid—or even offered to pay—AMC for its extensive due diligence work. (*Id.*, at ¶ 6.)

Within mere months of the judgment in the *Lompe* Action, TruAmerica took the unusual step of ignoring AMC's earlier commitment and due diligence and chose another property management company. AMC had *never* been this far along on due diligence work and then not been hired as the management company. (*Id.*; Echeverria Decl., Ex. A, pp. 129:12-18; 130:8-131:14)

The process on the Lowry and Ponderosa properties is specifically contrasted with another TruAmerica property in Denver, Colorado—named the Tamarac Village property—where AMC was retained as the management company. AMC was retained on March 28, 2014, for the Tamarac Village property *without* a request for proposal process because it was *before* the reservations expressed regarding the *Lompe* Action. (Wright Decl., ¶ 7.)

AMC would have received the management agreement on the Lowry and Ponderosa properties but for the judgment in the *Lompe* Action. (*Id.*, ¶ 9.) The judgment was a significant factor in AMC losing the business profits that those two properties represented. (*Id.*)

Even as recently as April 2015, Lynn Owen has stated that TruAmerica refused to sign the management contract with AMC "because we found out about the judgment in Wyoming." (Wright Decl., ¶ 8; Echeverria Decl., Ex. A, p. 125:15-18.)

**Fact Nos. 17, 18, 19** – Incomplete.

When AMC is involved from the very outset of a project, like it was with Element31, including the design, consulting, background, verbal promises from the owner, and extensive due diligence, it has never failed to take on management of a project when involved to that level. (Echeverria Decl., Ex. A, pp. 129:12-18; 130:8-131:14.)

The timing of The Ritchie Group's selection of Alliance as the property management group for the Element31 property—mere months after entry of judgment in the *Lompe* Action—at least suggests that it may have been caused by the judgment. (Echeverria Decl., Ex. A, p. 129:20-22.) Mr. Ritchie, in a conversation with AMC, confirmed that the judgment in the *Lompe* Action was "one of the things they took into consideration" in choosing Alliance over AMC. (Echeverria Decl., Ex. A, p. 129:24-25.)

## V.

## ARGUMENT

**A.  An insurer's breach of the implied covenant of good faith and fair dealing will subject it to *all harm* caused by that conduct—including harm to the pecuniary interests of the insured**

Pursuant to an insurer's duty of good faith and fair dealing, it has an obligation to settle claims against its insured when presented with a reasonable opportunity to do so:

> The duty of good faith and fair dealing which is implied by law to inhere in every insurance policy runs from the insurer to the insured. [Citations]. Breach of this duty may give rise to a cause of action for "third party" bad faith or for "first party" bad faith. A cause of action for "third party" bad faith will lie when a liability insurer fails in bad faith to settle a third-party claim within policy limits against its insured. [Citations]. Bad faith in this context would occur if an excess judgment were obtained under circumstances when the insurer failed "to exercise intelligence, good faith, and honest and conscientious fidelity to the common

- 5 -

1  interest of the [insured] as well as of the [insurer] and [to] give at least equal consideration to the interest of the insured."
2  *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992).

3  The governing standard is whether a prudent insurer would have accepted the settlement
4  offer if it alone were to be liable for the entire judgment. *Gainsco Ins. Co. v. Amoco Production*
5  *Co.*, 53 P.3d 1051, 1058 (Wyo. 2002). Failure to do so constitutes a breach of the insurers' duty
6  of good faith and fair dealing. *Id.*

7  Recovery of compensatory damages in *tort* is permitted under Wyoming law for an
8  insurer's breach of the duty of good faith and fair dealing. *State Farm Mut. Auto. Ins. Co. v.*
9  *Shrader*, 882 P.2d 813, 833 (Wyo. 1994). "Damages in tort 'provide necessary compensation for
10 insureds and incentive for insurers to settle valid claims.'" *Id.*, citing *McCullough v. Golden*
11 *Rule Ins. Co.*, 789 P.2d 855, 861 (Wyo. 1990). And the proper measure of compensatory
12 damages is the amount that will compensate a claimant for *all detriment* proximately caused by
13 the tortfeasors breach of duty. *Shrader*, at 833. The scope of damages includes all direct injury
14 suffered, whether it could have been anticipated or not. *Id.* (also citing with approval *Crisci v.*
15 *Security Ins. Co. of New Haven, Conn.*, 426 P.2d 173, 178 (Cal. 1967) (case finding damages
16 for entire amount of underlying judgment and emotional distress were recoverable for breach of
17 implied covenant in failing to settle a claim against the insured)).

18 Further, and cited with approval in *Shrader*, the Second Restatement of Torts § 903 finds
19 that compensatory damages are "the damages awarded to a person as compensation, indemnity,
20 or restitution for harm sustained," including harm to pecuniary interests and emotional distress.

21 Thus, under Wyoming law, "the scope of available compensatory damages for a breach
22 of the duty of good faith and fair dealing includes damages for harm to pecuniary interests and
23 emotional distress." *Shrader, supra*, 882. P.2d at 833.

24

25 **B.  Proximate cause—normally a question of *fact* for the jury—only requires conduct to be a substantial factor in bringing about the injuries**

26 Under Wyoming law, proximate cause is a *question of fact* for the jury unless reasonable
27 people could not disagree. *Buckley v. Bell*, 703 P.2d 1089, 1092 (Wyo. 1985). And legal
28 causation only requires that conduct be a substantial factor in bringing about the injuries: "[O]ur

court has identified legal causation as that conduct which is a substantial factor in bringing about the injuries identified in the complaint." *Id.* at 1091. One decision described the test as follows:

> [A] tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. [Citations.] The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability. [Citations.] Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination.
> *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo. 1983).

Wyoming's Civil Pattern Jury Instructions have described the causation requirement as only requiring the act to play a substantial part in bringing about the injury:

> An injury or damage is caused by an act, or a failure to act, whenever it appears from the evidence that the act, or failure to act, played a substantial part in bringing about the injury or damage.
> Wyoming Civil Pattern Jury Instructions, § 3.04 (2013).

Nor is there any requirement that an act must have been the *only* cause or the *primary* cause for liability to attach—multiple causes can result in an injury and still impose liability:

> If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a "cause" of the injury within the meaning of these instructions. A cause does not have to be the only cause or the last or nearest cause. It is sufficient if the act or failure to act joins in a natural and probable way with some other act or failure to act to cause some or all of the claimed injury.
> Wyoming Civil Pattern Jury Instructions, § 3.05 (2013).

C. **AMC's lost profits are recoverable for the insurers' failure to settle as they were proximately caused by the *Lompe* judgment and are capable of being calculated with a reasonable degree of probability**

The judgment in the *Lompe* Action was entered in December 2013. Mere months later, AMC had lost management contracts on *three* properties—Lowry and Ponderosa in Colorado, and Element31 in Utah. The timing is not mere coincidence. The owners of the three properties—TruAmerica and the Ritchie Group—admit that the judgment in the *Lompe* Action was a factor in their decision. (Ritchie Decl., ¶ 9; Owen Decl., ¶ 13.) An email from TruAmerica on the Lowry and Ponderosa properties even admitted that "with your unsettled lawsuit for gross negligence, we are not able to get management approval for you on the 2 larger assets, Lowry

and Ponderosa." (Wright Decl., Ex. A.) *No other factors* were listed. (*Id.*) AMC had also *never* been as far along on due diligence work or consulting and sign work as it had been on the three properties and then *not* been hired as the management company. (Wright Decl., ¶ 6; Echeverria Decl., Ex. A, pp. 129:12-18; 130:8-131:14.) Instead, when AMC had gone to the lengths it had for the Lowry, Ponderosa, and Element31 properties; it had *always* received the management contract before the *Lompe* judgment. (*Id.*)

Even the self-serving declarations submitted by Interstate/FFIC can only state that the *Lompe* Action was not the *primary* reason for selecting another property management company on the three properties. But as discussed above, that is not the standard. A cause need not be the *primary* or the *only* cause of harm in order to impose liability. Instead, it need only be a substantial factor in causing that harm. *Buckley v. Bell*, 703 P.2d 1089, 1091 (Wyo. 1985). The judgment in the *Lompe* Action can be one of *many* causes of the loss of management contracts on the three properties and still subject Interstate/FFIC to liability. Such is precisely the case here. And where there is a clear disagreement of fact—the *amount* of the role the judgment played in causing the loss—proximate cause *must be* a triable issue of fact. *Id.* at 1092.

This is also the case in courts that have closely considered the question. For example, California has held that lost profits proximately caused by the insurer's bad faith conduct may be recovered by the insured. *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032 (1973). These damages are even available for the insurer's failure to settle. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 888 (Cal.Ct.App. 2000). The same should be the case in this matter.

Further, under the relevant Wyoming civil jury instruction, recovery of lost profits only requires a plaintiff to show that:

> Loss of profits to [a business] [an individual] occasioned by the wrongful act of another is compensable and you may award such amount as is proved with a reasonable degree of probability. [Loss of profits will not be denied merely because a business is new if evidence is available to furnish a basis for computation of probable loss of profits.]
> Wyoming Civil Pattern Jury Instructions, § 4.07 (2013).

1  Here, the expert designation and report of Peter Formuzis, Ph.D., combined with the testimony of AMC and the evidence presented with this motion shows that the loss of profits is capable of being calculated with a reasonable degree of probability—indeed, Dr. Formuzis has calculated the loss down to the individual dollar.

Finally, Interstate/FFIC misstate the standard of review for this motion when they state that "AMC cannot show that it is entitled to damages for lost profits as a matter of law." (Motion, p. 8.) But this ignores that the *moving party* bears the "initial responsibility" to identify the basis for its motion, and demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Interstate/FFIC have not done so. By submitting evidence only challenging whether the *Lompe* judgment was the primary factor in causing the lost profits, Interstate/FFIC have all but admitted that a triable issue of fact remains as to whether the judgment was a *substantial* factor. At minimum, the issue of lost profits presents a triable issue of material fact—necessitating denial of this motion.

D.  **Reliance on *contract* cases to relieve Interstate/FFIC for their tortious failure to settle the *Lompe* Action is mistaken**

Interstate's/FFIC's argument that because AMC was the "proximate cause" of the judgment in the *Lompe* Action it should then relieve the insurers from any responsibility for their bad faith failure to settle is mistaken. Taken to its logical conclusion, insurers could never be liable in tort for *any* damages due to their failure to settle—but that is not the case under Wyoming law. Instead, carriers are routinely held liable for the *consequential* damages that flow from their breach of the implied covenant of good faith and fair dealing in failing to settle matters when presented with a reasonable opportunity to do so. *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992) ; *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 833 (Wyo. 1994). Such is precisely the case here.

Even the authority cited by the insurers demonstrates the folly of this motion, decisively holding that "[t]he issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996). The *Exxon* case also related to damages recoverable in *contract*: "where the injured party

- 9 -

APARTMENT MANAGEMENT CONSULTANTS, LLC'S, AND SUNRIDGE PARTNERS, LLC'S OPPOSITION TO INTERSTATE FIRE & CASUALTY COMPANY'S AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

is the sole proximate cause of the damage complained of, that party cannot recover in contract from a party whose breach of warranty is found to be a mere cause in fact of the damage." *Id.* at 839. Here, instead, AMC/Sunridge seek to recover *in tort* for the damages caused by Interstate's/FFIC's breach. *Exxon*'s holding is inapplicable. Similarly, *Robertson v. TWP, Inc.*, 656 P.2d 547 (Wyo. 1983) concerned whether an *earlier* breach of contract (regarding the placement of a sewer line which was not performed) could excuse a later excavation that caused harm. Finding that the *excavation* was the "sole proximate cause of the injuries," the court found no liability for the earlier breach of contract. *Id.* at 550-551.

Again, there can be no such finding here, and certainly not on summary judgment, that AMC/Sunridge were the *sole* proximate cause of the lost profits. Instead, the breach by Interstate/FFIC to settle the *Lompe* Action when presented with an opportunity within policy limits—and which would have *entirely resolved* the action against AMC/Sunridge—permitted the catastrophic judgment to be entered against the insureds. Partial summary judgment should be denied.

E.     **Dr. Peter Formuzis's opinion on lost profits is admissible**

The insurers' argument on the admissibility of Dr. Formuzis's opinion regarding lost profits is entirely derivative of their arguments addressed earlier. They do not challenge his qualifications to render an expert opinion, do not challenge his *other* opinions on AMC's/Sunridge's damages, and do not challenge the lost profit opinion's helpfulness to the trier of fact. The only challenge to Dr. Formuzis's lost profit opinion is that "AMC's loss of management fee income was unrelated to the outcome of the *Lompe* Action." (Motion, p. 10.) But where, as here, the failure of Interstate/FFIC to settle the *Lompe* Action was a *substantial factor* in causing the lost profits, Dr. Formuzis's opinion is admissible to determine the *amount* of that loss.

Interstate's/FFIC's request to exclude his opinion via a motion for partial summary judgment is also improper, as it does not encompass a "claim or defense" or the "part of each claim or defense" necessary for summary judgment under FRCP 56(a). Instead, it is more akin to

- 10 -

APARTMENT MANAGEMENT CONSULTANTS, LLC'S, AND SUNRIDGE PARTNERS, LLC'S OPPOSITION TO INTERSTATE FIRE & CASUALTY COMPANY'S AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

a disguised sub-motion in limine, which pursuant to this Court's procedures, are not to be filed until 30 days before the Final Pretrial Conference. (Court Procedure 9A, 9C.) This request should be disregarded.

## VI.
## CONCLUSION

At best, the insurers have only established that the *Lompe* judgment was not the primary reason for AMC's lost profits. But they have entirely failed to negate proximate cause—which only requires the judgment to be a *substantial* factor to impose liability. Through AMC's history with similar properties before the judgment, the actions and statements of Owen/Ritchie and their respective companies, and the evidence from AMC, there is at least a triable issue of fact regarding proximate cause.

The motion for partial summary judgment should be denied in its entirety.

Dated: May 8, 2015

SHERNOFF BIDART
ECHEVERRIA BENTLEY LLP


By: ___/s/ Ricardo Echeverria___
Michael J. Bidart, *admitted pro hac vice*
Ricardo Echeverria, *admitted pro hac vice*
Steven Messner, *admitted pro hac vice*

WOLF TIEDEKEN & WOODARD, PC

Robert Tiedeken, #5-1948

Attorneys for Defendants AMC/SUNRIDGE

Re: *Interstate Fire & Casualty Co., v. Apartment Management Consultants*
Case No. 13-CV-278

## CERTIFICATE OF SERVICE

I hereby certify that on **May 8, 2015**, I electronically filed the foregoing document entitled APARTMENT MANAGEMENT CONSULTANTS, LLC'S, AND SUNRIDGE PARTNERS, LLC'S OPPOSITION TO INTERSTATE FIRE & CASUALTY COMPANY'S AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT with the United States District Court, District of Wyoming. Notice will be automatically e-mailed to the following individuals registered with the Court's CM/ECF System:

Robert Tiedeken, Esq.
WOLF TIEDEKEN & WOODARD, P.C.
401 W. 19th Street, Suite 300
P.O. Box 491
Cheyenne, WY 82003

Corinne E. Rutledge, Esq.
J. Kent Rutledge, Esq.
Erin A. Barkley, Esq.
LATHROP & RUTLEDGE, P.C.
1920 Thomes, Suite 500
P. O. Box 4068
Cheyenne, WY 82003-4068

Shawn Hanson, Esq.
Danielle Crockett, Esq.
AKIN GUMP STRAUSS HAUER & FELD
580 California Street, Suite 1500
San Francisco, CA 94104

G. Bryan Ulmer, Esq.
Tyson E. Logan, Esq.
THE SPENCE LAW FIRM, LLC
15 S. Jackson Street
P.O. Box 548
Jackson, WY 83001

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **May 8, 2015**, at Claremont, California.

_____
ERIKA RAMIREZ